I represent the appellants in this case, and it's a review of a summary judgment by the trial court against the appellants. And the one thing I'd like to draw your attention to this morning in particular is the fact that there are four separate defendants in the case. One is Gateway Capital Partners. Another one is GCP. They're each Utah LLCs, and they each have common managers named Sean Hammond and Byron Lusk. And the real point I'd like to make is that there was not a strict delineation of what each one of those defendants' role was in putting a loan together for myself and my wife. We are the appellants in this case. The Gateway Capital Partners initially signed a letter of intent saying they would be interested in funding a loan for us. And then Mr. Hammond signed it as the managing partner for Gateway Capital Partners. Thereafter, Gateway did not lend any money but took the loan idea to GCP, which was another LLC, as I said, that also had Mr. Hammond and Mr. Lusk as their managing members. And the point we tried to make with the trial court is that a jury would have to determine what the role was of each of these players at the time that they helped us get this loan. And our contention was that they were acting as mortgage brokers under the definitions of Hawaii law and that they did not, first of all, were not licensed to act as mortgage brokers in Hawaii, and secondly, that they didn't adequately perform their duties as mortgage brokers. So when you signed the first amended promissory note and released everybody, what did you mean? What did it mean? Yeah. I mean, what it says in the, after you obtain the money and you're signing the promissory note, borrower hereby releases, discharges, acquits lender, and that's members, managers, officers, attorneys, agents, for many and all claims, demands, etc., etc. That may be as to GCP, but it didn't say anything with respect to Gateway, which is the company that we originally dealt with, with respect to this loan. It didn't say anything with respect to Mr. Hammond, who was representing Gateway Capital when he initially consulted with us, and he and Gateway took this to GCP and had them issue the loan to us. The contention we made is there's surely a question of fact as to whether or not Gateway Capital and Mr. Hammond were acting as brokers when they took this loan to GCP. What's the evidence that you point to that you rely upon that says that they, what did they do that actually suggests that they acted as a broker? Well, first of all, the exhibit R attached to the appellee's motion for summary judgment was the initial letter of intent that Mr. Hammond signed as the representative and manager of Gateway Capital Partners. That's the May 19th letter? Yes. And then the... So what is it about that letter that suggests that there was a broker relationship involved here? It doesn't say there was... Lender is interested in making a loan. It doesn't say there was a broker agreement, but they acted as brokers when they took this to GCP and had GCP fund the loan. And Judge Seabright didn't address that in his ruling. He didn't, basically didn't mention what Gateway Capital's position was. So who was, if GCP was the lender? Yes. Then who was the broker? The broker was Gateway Capital and Mr. Hammond who was acting for him and signed the, or for Gateway, and he actually signed as their managing member on the exhibit R. Gateway and Mr. Hammond were working on your behalf to find a loan for you. Yes. And surely the... But they did not solicit from any other lender. They took it to a different lender which was GCP. No, no, I mean other than GCP. I'm not... In other words, what mortgage brokers do is they say we're going to find you a mortgage. And they go around and look through a whole bunch of different lenders. They try to get you the best rate and so forth. Now, you would agree that didn't happen in this case. It may not be dispositive, but you'd have to agree that didn't happen. Right? I'm not aware of it if it did. Yeah. For the sake of argument, no, it didn't happen. There's nothing in the record that would indicate, yeah. But they did take it to another... Entity. Entity. And that lender provided a loan. Why does the fact that they took it to another entity that they controlled or had some affiliation with make them a broker for you as opposed to an agent for the lender? Just because someone solicits a borrower doesn't necessarily make them a mortgage broker per se. So tell me, why do you think that... Go ahead. Because we paid them $263,000 out of the funding, the loan funding that GCP came up with. They actually received a, call it a commission or a bonus or a treat or whatever you want to call it, for putting us together. And that fits the classic definition under Hawaii law of what a mortgage broker does. Puts two parties together expecting money back. In the loan agreement, was that sum identified? How was that sum identified? It was only identified at the closing with the closing statement, which is in the record. And that actually came out of the loan proceeds. So that was our money. Was it an advanced payment? No, it just went to Gateway Capital, three different... I can't remember right offhand what they categorized it as, but I'd like to say... It wasn't categorized as anything very clearly exponentary. It just was identified as a payment. Yes. It didn't save broker's fee. And that's one of the things this law is supposed to cure, is hiding payments to brokers by calling them something other than that in a closing statement. Maybe if I'd save a couple minutes for my rebuttal, I'll bring that categorization forward. And I have it here, but I just can't put my hand on it right now. So we're talking about summary judgment. And I think that the record clearly shows that there's confusion about this, and at least confusion and uncertainty, which had to be resolved by a prior fact. And especially when the judge didn't say Gateway loaned money. That was why he let GCP off the hook, because they were a lender. Clearly Gateway was not a lender. But the theory of the summary judgment was that each of the named defendants was a lender. So Gateway started out as initially this letter, this letter of May 19, 2008. The preliminary communications and whatnot suggested here that Gateway was going to be the lender, right? Yes. In fact, they... Now, you wouldn't be complaining today if Gateway had made the loan. Is that your whole point? The facts would be different, and I don't know whether they still would be acting as a broker. How could they be a broker if they were the lender? Because they came to us to try to put together a loan for us. But that isn't the facts of this case. Those aren't the facts. The facts are that they said that they, in that letter, they described themselves as the lender. Right. If Gateway, or if they're saying me, is the lender. Right. And if they'd been the lender, then you're right. The argument would obviously be different, but they didn't turn out to be the lender. And Judge Seabright's order... But the letter says that they can either lend it or they can designate somebody, like it might be reasonable that it was one of their other companies. Well, then, if you extend that, then they aren't agreeing to be a broker. I'm not sure if they're agreeing to designate somebody to furnish the loan. Well, a broker doesn't usually designate someone. He goes and finds them. Yeah, he goes and finds someone. But it's not that it's a company owned by the same individuals. That doesn't sound like a broker. It sounds like the same people are making the loan to a different corporation. That was not the logic used by the court in granting the summary judgment. The logic was that each of the defendants was a lender. They clearly were not. So I don't know what to do. I'm out of time. Are there more questions or advice? There is no more time, but we'll give you a minute or two for rebuttal. Thank you. Good morning. May I please have the court? Excuse me. Sean Smith for the Eppleese. You have to speak up a little.  Sean Smith for the Eppleese. How's that? Better. Okay. So what was the payment to Gateway out of the loan process? The payment to Gateway, Your Honor, is designated as Mr. McCarty stated. It's designated as three separate things. One just says payment to Gateway. One says development funds to Gateway. Don't try to speak up. We can't hear you. Okay. The payments are not specified as broker fees. That's for sure. It doesn't say exactly what they are, and I don't personally know what they're for. One's designated as payment to Gateway. Doesn't it make a difference to you? I'm sorry? Doesn't it make a difference to you? It's interesting that it's not specified as a broker fee for me. I would think it would be specified. Right, but I mean summary judgment. So the inferences are drawn in their favor. So some payment was made to Gateway. What was it for? I think on summary judgment, inferences are drawn in their favor, but they have to be reasonable inferences. Right, so what was the payment for? I don't know, Your Honor. When Mr. McCarty asked Mr. Hammond, the response, according to his brief, is that the payments were how the investors wanted it paid out. So that's the level of specificity we're dealing with. You mean that was at the deposition? Was there a deposition taken here? No, there was not, Your Honor. That's in his briefs. So that's his position. So nobody sat down with Mr. Hammond or the other fellow? Not in the proceedings, Your Honor. There was no deposition. There were some interrogatories, but nothing that sort of was directed to that particular question. But I think based on his representation, you have to assume that the representations that were made to him were that these were payments made out to investors. And so I think if you take a look at the letter of intent, which then is Gateway, so we're talking about the same principles, Sean Hammond, Byron Luss, working for Gateway. That's the first contact with Mr. McCarty is under this banner of Gateway. And they say, yes, we want to make you a loan. We or a designated entity will make you a loan. And I think it's pretty clear that the designated entity wound up making the loan, and it's their company. That's the reasonable inference that I draw from this. Mr. McCarty has two other brokers. That's in the record. The actual mortgage brokers are cited to the IndyMac case, I think, where it discusses how it's relevant to the determination of whether or not the lender can be considered a mortgage broker if the person already has their own mortgage brokers. So we're not talking about these two gentlemen coming to him and saying, we're going to make you a loan or we're going to go out and find you a lender. He's got brokers that connected him with these two gentlemen who own two companies and were basically trying to figure out how to structure this thing, whether it's going to come through Gateway or whether it's going to come through GCP. So I think that's what the record shows. Would it make a difference if it were like a finder's fee or something? You know, a finder's fee, it's a different label. I don't know that it would make a difference. One really key reason that it wouldn't make a difference is the remedy that he's seeking. And the remedy is under this Chapter 454 Fireby Statute, which is no longer on the books, by the way. But when it was in effect, it says that if you make a contract with an unlicensed mortgage broker, that contract is void. So the remedy he's seeking is voiding the whole loan. And the reason that it doesn't make any difference is he's taking something else. Besides trying to void the loan agreement. Right. He had other court claims. It's a turn on whether or not this is a broker relationship or a lender relationship. That's correct. He does have claims for damages, which we think also turn on him. The fact that he needs to have submitted evidence of facts to establish a genuine question of fact as to whether or not there was a relationship between himself and Gateway or himself and GCP to establish that they were his broker. It's just not there. All we have is this letter of intent which says we're interested in being your lender. And then we have some fees that aren't sort of clear about what they're for, but based on representations they're probably payments to an investor. Was that payment reflected as an amount that reduced the amount of loan that was due? Or was it still a full amount of loan still due and that was just money that was given to Gateway? I'm looking at the settlement statement. It's settlement charges. So it wouldn't be something that's, you know, once the loan is funded and that's paid out, it would still be a principal that doesn't take that into account, I would think. But I'm not really sure. I haven't addressed that. I don't know how else to answer that one. I'm just curious. The final point I wanted to make on the MSJ question, whether we're dealing with a broker or not, is this idea that this was sort of a loan that was taken from one entity to the next. These are new arguments. This was not brought up. I can cite the court to excerpts of record, pages 52 and 56, and then Judge Seabright's order on excerpts of record page 28. Mr. McCarty's representations to the court were basically that this was a loan that GCP, through Sean Hammond, negotiated and came up with. And there were never any allegations below about Gateway brokering the loan in the sense of taking something from A to B. The theory below is always that Gateway and GCP were both brokers as well as lenders. And under broad reading of this KEDA case that we both cited, that by virtue of just making the loan, it would become a broker. And that's another way to address the broker issue. We haven't really discussed the confirmation of sale issue. If the court has any questions, I'd be happy to. And I don't know how much time I have. I'm happy to sit down unless the court has questions. Okay. If it doesn't make you happy, go ahead. Thank you. If I may have a couple minutes. Maybe two minutes. I did find the reference and the designation of the payments to Gateway Capital at closing. And these were monies taken out of the loan, proceeds held back just like they would a real estate commission or something like that. One designation was reimbursement costs to Gateway Capital, $5,000. Payment to Gateway Capital, $108,000. And development funds to Gateway Capital, $150,000. And so that's what this was designated as. And clearly they received a benefit. It doesn't have to be called a broker's commission. Hawaiian law says that people cannot, for gain, put party A together with party B for a loan unless they're licensed as real estate brokers. And Mr. Hammond was not. Mr. Gateway was not. And I think that there are obviously benefits by having separate entities and separate companies, but there are also drawbacks because you're separate. And you can't act one for the other. You act for yourself. So with that in mind, unless there's further questions, that's all I have to offer. Thank you. Thank you, guys. Case just argued and submitted.
judges: Reinhardt, Thomas, Paez